OSCN Found Document:STATE ex rel. SMITH v. NEUWIRTH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. SMITH v. NEUWIRTH
2014 OK CR 16
Case Number: PC-2014-0543
Decided: 11/05/2014
THE STATE OF OKLAHOMA ex rel. THE HONORABLE FRED C. SMITH, DISTRICT ATTORNEY, DISTRICT FIVE, STATE OF OKLAHOMA, Petitioner, v. THE HONORABLE GERALD F. NEUWIRTH, DISTRICT JUDGE, FIFTH JUDICIAL DISTRICT, Respondent.
Cite as: 2014 OK CR 16, __ __

 



ORDER VACATING DISTRICT COURT ORDER AND
REMANDING MATTER TO DISTRICT COURT


¶1 On June 23, 2014, Petitioner, by and through Mark R. Stoneman, Assistant District Attorney, filed an application for this Court to assume original jurisdiction for a petition for a writ of prohibition. Petitioner seeks an extraordinary writ prohibiting the Honorable Gerald F. Neuwirth, District Judge, the assigned District Judge in the case of David Payne v. State of Oklahoma, Comanche County Case No. CF-1993-107, from enforcing the order granting post-conviction DNA testing filed on May 27, 2014. The order requires the testing of DNA evidence and compels the post-conviction discovery of documents and physical evidence pursuant to Oklahoma's Postconviction DNA Act, 22 O.S.Supp.2013, § 1373 et seq.

¶2 Petitioner argues that Judge Neuwirth's order granting DNA testing pursuant to 22 O.S.Supp.2013, § 1373 et seq., is contrary to and without authority of law because (1) the defendant in this case failed to sufficiently demonstrate that he would not have been convicted if favorable results had been obtained through DNA testing at the time of his original prosecution; (2) the defendant unreasonably delayed his request for testing until four witnesses had died and twenty years had passed; and (3) the trial judge acted contrary to the law in ordering post-conviction discovery where the defendant did not allege a Brady violation.

¶3 David Payne entered a blind plea of nolo contendere on June 17, 1993, to murder in the second degree, was sentenced to life imprisonment, and did not timely file a motion to withdraw his plea or otherwise appeal his conviction. The victim, David Payne's mother, was found blindfolded with her hands and feet tied behind her back with cord and with a knife in her chest. She died from two stab wounds to the chest, had injuries consistent with having been punched in the face, and she also had injuries to her hands. Payne filed his first application for post-conviction relief in the District Court on March 5, 2013, and a supplemental brief on November 15, 2013, requesting DNA testing of evidence from the murder scene and further discovery of documents, physical evidence, recordings and photographs. The Post-Conviction DNA Act was enacted into law effective November 1, 2013.

¶4 Following a hearing on May 22, 2014, Judge Neuwirth issued an order filed May 27, 2014, granting post-conviction DNA testing. Judge Neuwirth's order summarily finds that the defendant met all of the requirements/qualifications for post-conviction DNA testing and discovery pursuant to Section 1373. Judge Neuwirth ordered that the Office of the Comanche County District Attorney "cooperate in all aspects in turning over any documents/items of evidence to facilitate Petitioner in post-conviction DNA testing." At the May 22, 2014, hearing Judge Neuwirth found:



In looking at the statute itself, one, a reasonable probability the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution. I don't understand how you could ever deny that, if you have favorable results, they are such that they show exculpatory evidence, if they are favorable. Two, it is not made to unduly delay the execution or sentence of administration. I agree with you. He is serving his time. I don't see how that delays it. You can make that argument, I suppose, once you get down the road, but at this point so far as testing is concerned, I don't believe under the statute I have any other decision other than to allow it because I think one, two, three, four and five are all met by the facts of this case.



Judge Neuwirth then ordered the District Attorney to cooperate in providing "those matters" and denied the District Attorney's request for written findings of fact and conclusions of law. Judge Neuwirth ordered the State to turn over any documents or any documentary evidence, reports or "things of that nature" that it has that would help in testing.

¶5 Petitioner argues that at no point during the hearing on May 22, 2014, nor in the written order granting DNA testing, did Judge Neuwirth "indicate the basis for finding that the hypothesized DNA results would create a reasonable probability that Payne would not have been convicted had those test results been available at the time of his original plea." Petitioner argues that the petition for DNA testing should have been denied because Payne did not meet his burden of showing a reasonable probability that he would not have been convicted if favorable DNA results had been obtained at the time of his original prosecution and that Payne also failed to prove that his petition was not made for the purpose of delaying the administration of justice. The State also argues that even if, as Payne speculates, a third person's DNA were to be found on the physical evidence, it would not be so inconsistent with the evidence of Payne's guilt that it would undermine confidence in his conviction. Other evidence of Payne's guilt is set out by the State as follows:



In this case, David Payne confessed. (Plea Tr. at 19-20, 22, 24) Payne knew details of the crime scene that he would not have known unless he had seen his murdered mother prior to his father discovering Mrs. Payne. (Id. at 16, 19, 22) After the murder, Payne was found to be in possession of the victim's key ring, which his sister knew the victim never would have willingly given to Payne. (Id. at 19) Payne had a motive; his addiction to cocaine drove him into a rage when his mother refused to give him money to buy more cocaine. (Id. at 24) Payne even tried to get others to lie for him to create an alibi. (Id. at 17-18) Payne now claims that he is innocent yet offers no theory or evidence as to who the 'real' killer is. Nor has Payne offered any substantive argument or testimony as to why his confession should be disregarded.



¶6 The State also submits that Payne's twenty-year delay in attacking his conviction has caused actual prejudice to the State's ability to re-prosecute this case if it were to be remanded for a new trial because Payne did not file his request for DNA testing until after four State witnesses had passed away. Susan Duncan, Payne's sister, who claimed Payne was constantly trying to get money from their parents to fund his drug addiction, passed away in 2000; Hugh Payne, David Payne's father, who found his wife's body, passed away in 2007; George Battise, one of the jailers who heard Payne admit that he killed his mother, passed away in 2010; and Randy Maples, one of the lead investigators for this case and endorsed as a witness, passed away in 2012.

¶7 The State also argues that Judge Neuwirth should not have granted Payne's discovery request as Payne has not shown, nor even alleged, any pre-trial discovery violations and that Payne is therefore not entitled to any additional post-conviction discovery of the other physical evidence and documents requested. The State argues that 22 O.S.Supp.2013, § 1373.2(D), requires its response to include an inventory of all the evidence related to the case but other than a list of evidence, that no other discovery is compulsory under Section 1373.

¶8 In this Court's Order issued June 27, 2014, Respondent, or a designated representative, was directed to file a response to the State's application addressing the issues raised in the State's Brief and, additionally, addressing whether a sworn affidavit by the defendant containing statements of fact in support of the motion, as required by Section 1373.2(C), was filed with the post-conviction application. Respondent was also directed to address whether the written order filed May 27, 2014, is in compliance with the requirements of Sections 1373.4(B), (D), and (F). On July 7, 2014, Ken Sue Doerfel, designated representative for Respondent, filed a Motion to Associate Counsel requesting an order recognizing Karen Denise Thompson, licensed in the State of New York, to practice in the above styled appeal. The motion was granted by this Court in an Order issued July 22, 2014. The Designated Respondent's reply to the State's application was filed in this Court on July 24, 2014.

¶9 Respondent answers (1) that a writ of prohibition is an illegitimate remedy for an interlocutory, adverse finding in the action below; (2) that the District Court's grant of DNA testing was fully sanctioned by the Act and was thus wholly within its jurisdiction and authority to award; and (3) that Mr. Payne fully satisfies the requirements for DNA testing as demarcated in the Act.

¶10 Respondent asserts, without citing any controlling authority, that although an appellate remedy is, in fact, available to the State, such appeal would only lie upon the issuance of a "final order" by the District Court and that a "final order" under the Post-Conviction DNA Act could include, inter alia, the vacatur of Mr. Payne's conviction. In effect, Respondent's argument would not allow the State to seek relief in this Court by appealing a District Court order granting a request for DNA testing under the Post-Conviction DNA Act, but would allow the defendant to seek relief from the denial of a request for DNA testing as that denial would constitute a final order.

¶11 Section 1373.7 of Title 22 provides: "An appeal under the provisions of the Post-Conviction DNA Act may be taken in the same manner as any other appeal." We find that an order granting a DNA request under this Act is a final order from which the State may seek relief in this Court under the provisions of Section 1373.7. The procedure for any appeal by the State or the defendant under the Post-Conviction DNA Act would be the same procedure as set forth in 22 O.S.2011, § 1087, an appeal to this Court under the Uniform Post-Conviction Procedure Act. Therefore, we will construe Petitioner's application to this Court as a post-conviction appeal pursuant to Section 1373.7.

¶12 We agree that the trial judge abused his discretion in granting post-conviction DNA testing in this case. The initial requirement by the trial court is set out in 22 O.S.Supp.2013, § 1373.4(A)(1), which provides:



A. . . . A court shall order DNA testing only if the court finds:

1. A reasonable probability that the Petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution; . . .



Therefore, it is not only that evidence subject to DNA testing is available, but there must be a showing as to how that evidence "if favorable" would have prevented the conviction in the first instance. In addition, if the court determines that DNA testing is warranted, then the court must ensure the integrity of the evidence is maintained. The chain of custody must be preserved and the evidence protected from spoliation.

¶13 In the present case the record reflects that the mandates of Sections 1373.2(C), 1373.4(D) and (F), and 1373.5(A)(6) of Title 22 have not been followed. As a result, the order granting relief is vacated for the following reasons:

I.

22 O.S.Supp.2013, § 1373.2(C) requires:



The motion requesting forensic DNA testing shall be accompanied by an affidavit sworn to by the convicted person containing statements of fact in support of the motion. (Emphasis added)



The record in this case contains no sworn affidavit. To make a finding that there is a reasonable probability the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution as set forth in Section 1373.4(A)(1), without the sworn affidavit required by Section 1373.2(C), is premature. The statute does not allow the District Court to consider any request for DNA testing under this Act without this sworn affidavit.

II.



¶14 22 O.S.Supp.2013, §§ 1373.4(D) and (F) require:

D. The court may order DNA testing to be performed by the Oklahoma State Bureau of Investigation (OSBI), an accredited laboratory operating under contract with the OSBI or another accredited laboratory, as defined in Section 150.37 of Title 74 of the Oklahoma Statutes. If the OSBI or an accredited laboratory under contract with the OSBI conducts the testing, the state shall bear the costs of the testing. If another laboratory conducts the testing because neither the OSBI nor an accredited laboratory under contract with the OSBI has the ability or the resources to conduct the type of DNA testing to be performed, or if an accredited laboratory that is neither the OSBI nor under contract with the OSBI is chosen for some other reason, then the court shall require the petitioner to pay for the testing.

F. If an accredited laboratory other than the OSBI or one under contract with the OSBI performs the DNA testing, the court shall impose reasonable conditions on the testing of the evidence to protect the interests of the parties in the integrity of the evidence and testing process and to preserve the evidence to the greatest extent possible.



The record does not reflect that the requirements of this section have been met. Judge Neuwirth asked defense counsel if she had a laboratory and defense counsel answered that the laboratory was in Dallas, Texas. Judge Neuwirth stated:



"I don't guess I need to make an order as to where it will be done. I will include in my order that the State is ordered to turn over any documents or any documentary evidence, reports, or things of that nature that it has that will help in testing."



¶15 When DNA testing is ordered by the District Court pursuant to this Act, written findings of fact and conclusions of law will be required and must include specific directions complying with Sections 1373.4(B), (D) and (F). The trial court must also ensure the integrity of the evidence and the testing process. A summary order directing the District Attorney to "cooperate in all aspects in turning over any documents/items of evidence to facilitate Petitioner in post-conviction DNA testing" does not comply with the requirements of the statute. The written order must specify the appropriate laboratory for testing, who bears the costs of the testing, and must impose reasonable conditions on the testing of the evidence if the laboratory selected is one other than OSBI or one not under contract with OSBI.

III.



¶16 22 O.S.Supp.2013, § 1373.5(A)(6) requires:

A. If the results of the forensic DNA testing conducted under the provisions of this act are favorable to the petitioner, the court shall schedule a hearing to determine the appropriate relief to be granted. Based on the results of the testing and any other evidence presented at the hearing, the court shall thereafter enter any order that serves the interests of justice including, but not limited to, any of the following: . . .

6. An order granting the petitioner additional discovery on matters related to the DNA test results on the conviction or sentence under scrutiny including, but not limited to, documents pertaining to the original criminal investigation or the identities of other suspects; or . . . (Emphasis added)



¶17 Any order by the District Court for the State to effect the transfer of any items of evidence other than those "to be tested along with any documents, logs or reports relating to the items of evidence collected . . . to the designated laboratory or laboratories," (emphasis added) as set forth in 22 O.S.Supp.2013, § 1373.4(B), would be premature until favorable DNA results are found. Any additional discovery related to the DNA test under this Act would only be proper after a finding that the results of the forensic DNA testing are favorable to the petitioner. 22 O.S.Supp.2013, § 1373.5(A)(6).

¶18 The District Court has abused its discretion in granting DNA testing in this case without complying with the mandates of the Post-Conviction DNA Act. Accordingly, the District Court order is VACATED and the matter is REMANDED to the District Court for further proceedings consistent with this Order. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2014), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

¶19 IT IS SO ORDERED.

¶20 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 5th day of November, 2014.


/S/DAVID B. LEWIS, Presiding Judge

/S/CLANCY SMITH, Vice Presiding Judge

/S/GARY L. LUMPKIN, Judge

/S/ARLENE JOHNSON, Judge


ATTEST:
/s/Michael S. Richie
Clerk


 







 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1373, Short Title
Discussed
 22 O.S. 1373.2, Eligibility and Procedures for Postconviction DNA Testing
Discussed
 22 O.S. 1373.4, Hearing - Findings Necessary for Order for Testing - Availability of Materials to be Tested - Disclosure of Results
Discussed at Length
 22 O.S. 1373.5, Powers of Court When Testing Results are Favorable to Petitioner - Orders When Results Unfavorable
Discussed
 22 O.S. 1087, Appeal to Court of Criminal Appeals
Cited